1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, *pro hac vice* anticipated
Jason Rathod, *pro hac vice* anticipated
Esfand Nafisi (State Bar No. 320119)
388 Market Street, Suite 1300
San Francisco, CA 94111

*Attorneys for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON POZNANSKY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> vs.<br><br>MOLEKULE, INC.,<br><br>      Defendant. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Deceit and Fraudulent Concealment;<br>(2) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code. §17500, *et seq.*<br>(3) Violation of the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200 *et seq*.<br>(4) Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

1        1.      This consumer class action arises from the marketing, sale and distribution of

2    defective air purification devices by Molekule, Inc. ("Defendant" or "Molekule") called the

3    Molekule Air, Air Mini, and Air Mini+ (the "Air Purifiers").

4        2.      Described by Defendant as "the world's first molecular air purifier," the Molekule

5    devices depends on a proprietary Photo Electrochemical Oxidation ("PECO") filter to remove

6    pollution from the air. Not only does Defendant's PECO filter perform worse than traditional

7    HEPA air purifiers, the PECO filter also does not remove any pollution from the air (the

8    "Defect").

9        3.      In marketing the Air Purifiers, Molekule made a number of claims regarding the

10   performance, abilities, and benefits of the Air Purifiers, including that the Air Purifiers: (1) use

11   PECO filter technology that "outperforms HEPA filters in every category of pollutant"; (2)

12   "eradicate[] the full spectrum of indoor air pollutants;" (3) are capable of achieving quantified

13   pollution-removal benchmarks (for example, that an Air Purifier "destroys 1 million allergens in

14   4 minutes"); (4) were subject to "independent testing" that served as the basis for Molekule's

15   claims; (5) are rated to function in rooms of certain sizes; and (6) provide allergy and asthma

16   symptom relief. Additionally, Molekule has tailored its advertising to capitalize on current

17   events, claiming, for example, that the Air Purifiers would neutralizing pollution caused by the

18   wildfires and "destroy" coronavirus.

19       4.      These claims were promulgated to the public through Defendant's website,

20   YouTube videos, social media, testimonials (both from individuals and medical professionals),

21   published interviews with Defendant's founders, and other online media.

22       5.      But Molekule's claims did not hold up under scrutiny. Consumer Reports, a

23   consumer-oriented 501(c)3 organization dedicated to reviewing products, declared that the

24   Molekule Air "almost flunked" the standard array of tests through which it puts air purifiers.

25   Perry Santanachote, *Does The Molekule Air Purifier Live Up To The Hype?*,

26   ConsumerReports.org (Dec. 9, 2019), *available at* https://www.consumerreports.org/air-

27   purifiers/molekule-air-purifier-review/ (last visited April 2, 2020). Wirecutter, a technology

28   review website affiliated with the New York Times, described the Molekule as "The worst air

     purifier we've ever tested." Tim Heffernan, *Molekule: The Worst Air Purifier We've Ever*

CLASS ACTION COMPLAINT

*Tested*, Youtube.com (Oct. 31, 2019), *available at*

https://www.youtube.com/watch?v=VM9CJZpqfpA (last visited April 2, 2020); Tim Heffernan,

The Best Air Purifier, Wirecutter.com (May 13, 2020), *available at*

https://thewirecutter.com/reviews/best-air-purifier/#molekule-the-worst-air-purifier-weve-ever-

tested (last visited May 21, 2020).

6.      Wirecutter tested one claim in particular and found that the Molekule Air did not

come close to satisfying it. Molekule had claimed on its website and in various advertisements

that its "scientifically-proven nanotechnology outperforms HEPA filters in every category of

pollutant." *See id.* Tests that pitted the Molekule Air against HEPA filter devices revealed,

however, that on every setting the Molekule Air produced results that were substantially worse

than its competition. Indeed, on the lowest setting, the Molekule Air "results look worse than

what you see with no purifier running at all." After this review was published Molekule scrubbed

the contested claim from its website. *See id.*

7.      Molekule's claims also fared poorly when scrutinized by advertising industry

watchdogs. When a competing manufacturer of air purifiers challenged over two dozen of

Molekule's claims in a proceeding before an organization that investigates advertising claims,

that organization (and its appellate division) concluded that almost none of Molekule's claims

were supported by evidence. In response, Molekule agreed to alter its advertising to omit those

unsubstantiated claims.

8.      Defendant engaged in a deceptive and misleading marketing campaign to sell Air

Purifiers based on false claims that it spread through its own website, social media, interviews

with third-party publications, YouTube, and other fora. Defendant's greed-driven scheme is at

the expense of consumers across the country and in violation of applicable law.

9.      Consumers like Ron Poznansky ("Plaintiff") purchased the Air Purifiers after

relying on Molekule's false and misleading representations and received defective devices that

could not perform as advertised. Many consumers purchased Air Purifiers based on Defendant's

representation that PECO filters are superior to HEPA filters—an indisputably false claim.

Defendant's advertisements are replete with claims that the Air Purifiers would "completely

eliminate" indoor pollution, a falsehood that motivated Plaintiff and many members of the Class

CLASS ACTION COMPLAINT

1  to purchase the Air Purifiers. Similarly, customers purchased Air Purifiers based on Defendant's
2  claims that the device would ameliorate their allergies and/or asthma symptoms only to find that
3  the product offered no therapeutic benefit whatsoever.

4        10.    Though Molekule touted the Air Purifiers, which are among the most expensive
5  available, as a premium air purification device featuring revolutionary and superior new
6  technology, it knew or should have known about the Defect and that the Air Purifiers could not
7  perform as represented. Despite this knowledge, Molekule failed to disclose the truth to
8  purchasers of Air Purifiers and continues to promote false and unsubstantiated claims to attract
9  new purchasers. Defendant unjustly profits on these falsehoods by selling Air Purifiers and
10  replacement parts and accessories thereto.

11        11.    Plaintiff and Class members have suffered injuries in fact, incurred damages, and
12  have otherwise been harmed by Defendant's conduct.

13        12.    Accordingly, Plaintiff seeks redress for Defendant's unlawful conduct. Plaintiff
14  also seeks money damages and equitable relief for Defendant's conduct described herein.

**PARTIES**

15  **A.    PLAINTIFF**

16        13.    At all relevant times, Ron Poznansky was a citizen of the United States, residing
17  in San Francisco, California.

18  **B.    DEFENDANT**

19        14.    Defendant Molekule, Inc. is a corporation formed under the laws of the State of
20  Delaware with its headquarters in San Francisco, California.

21        15.    Molekule was launched in May of 2016 and is a family business: it was co-
22  founded by Yogi Goswami (Chief Scientist), a Professor and the director of the Clean Energy
23  Research Center at the University of South Florida, and his adult children, Dilip Goswami (CEO)
24  and Jaya Rao (COO).

25        16.    By early 2020, Molekule had secured approximately $96.4 million in funding
26  from investors.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action under the

Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class

members exceed the sum or value of $5,000,000, exclusive of interests and costs.  This is a

putative class action in which more than two-thirds of the proposed class members are citizens of

states other than the state in which Defendant is deemed to reside. In addition, this Court has

supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

18.     This Court has personal jurisdiction over Molekule because: its principal place of

business is within this District; Molekule has sufficient minimum contacts in this District to

render the exercise of jurisdiction by this Court proper; Molekule has consented to jurisdiction by

registering to conduct business in California; and Molekule otherwise intentionally avails itself

of the California markets through promotion, sale, marketing and distribution of its Air Purifiers

in and from California, which renders the exercise of jurisdiction by this Court proper and

necessary as Molekule is "at home" in California.

19.     Venue is proper in this Court under 28 U.S.C. § 1391 because Molekule's

principal place of business is within this District and a substantial part of the events or omissions

giving rise to the claims of at least one Plaintiff occurred in this District.

## FACTS SPECIFIC TO PLAINTIFF

20.     On or around March 28, 2020, Mr. Poznansky purchased the Molekule Air Mini

from Amazon.com for approximately $432.

21.     Prior to his purchase Mr. Poznansky had seen Defendant's advertisements on

Instagram. Mr. Poznansky recalled first seeing Defendant's advertisements there during the 2018

wildfires that blanketed Northern California with smoke, and regularly thereafter when he used

Instagram. Mr. Poznansky also visited Defendant's website and read articles about the Air

Purifiers prior to purchasing his device.

22.     In this connection, Mr. Poznansky saw Defendant's representations that the Air

Purifiers: (1) would clean indoor air better than any competing air purifier because of the PECO

filter; (2) were capable of eliminating pollution caused by nearby wildfires; (3) would eliminate

CLASS ACTION COMPLAINT

airborne allergens indoors and thereby relieve symptoms of allergies; and (4) will kill ninety-nine per cent of viruses and therefore are able to prevent coronavirus infections.

23.     Mr. Poznansky purchased his Air Purifier on the belief that it would help protect him against coronavirus, to deal with smoke pollution caused by future wildfires in Northern California, and to address indoor dust related to moving to a new residence. Given these concerns, he wanted to purchase a top-line air purifier that outperformed a normal air purifier and provided maximal protection against indoor pollution and viruses. He relied on Molekule's claims regarding the performance of the Air Purifiers in making his purchase.

24.     At all relevant times, Mr. Poznansky used and maintained his Molekule Air in a manner typical of a reasonable consumer and in accordance with Defendant's instructions.

25.     Soon after purchasing, he soon noticed that his Air Purifier had no noticeable impact on indoor air quality. Mr. Poznansky owns and regularly uses an air quality sensor that measures particulate pollution. Mr. Poznansky tested the air quality in his apartment while operating his Air Purifier as recommended by Defendant: in an elevated position in a room of around 250 square feet. His testing confirmed that his Air Mini failed, on every setting, to reduce the particulate count in his apartment as measured by his air quality sensor.

26.     He would not have purchased the Air Mini, or any other Air Purifier, if he had known about the Defect or that Defendant was misrepresenting the performance, capabilities, and benefits of the Air Purifiers. In particular, he would not have purchased an Air Purifier if he had known that Defendant's claims were false.

**COMMON FACTUAL ALLEGATIONS**

27.     Indoor air purification is a burgeoning market. In 2019 the global air purifier market was estimated at $8.04 billion and is expected to grow to $18.21 billion by 2027. Grand View Research, *Air Purifier Market Size Worth $18.21 Billion By 2027 | CAGR: 10.8%*, GrandviewResearch.com (February 2020), *available at* https://www.grandviewresearch.com/press-release/global-air-purifier-market (*last visited* May 20, 2020). HEPA technology currently makes up the largest segment of the market with a share of 37.8%. *Id.*

**A.      Molekule's Air Purifiers**

CLASS ACTION COMPLAINT

28.     Defendant made the Molekule Air available for preorder on May 24, 2016, touting the device as "the world's first molecular air purifier"—and no less than a "catalyst for human progress"—the Air Purifiers utilize a combination of mechanical prefilter and Defendant's PECO filter to remove pollutants from indoor air.  *Molekule Launches the World's First Molecular Air Purifier,* Molekule.com (May 24, 2016), *available at* https://assets.molekule.com/2016-05-24+-+Molekule+Launch.pdf (last visited May 20, 2020). Defendant began shipping the Molekule Air to North American purchasers in 2017.

29.     Defendant currently offers three models of Air Purifiers, including the Molekule Air, which is described by Defendant as being for rooms up to 600 square feet, and retails for $799, and the Air Mini and Air Mini+, which are intended for rooms of up to 250 square feet, and retail for $399 and $499, respectively. The Air Purifiers are available for purchase on Defendant's website and through a select few retailers. Defendant also offers a replacement filter subscription service for $129 per year.

30.     Molekule's Air Purifiers use a two-step filtration system: air is first forced through a pre-filter, which captures larger particles such as dust, pollen, and textile fibers, and then through the PECO filter, which purportedly destroys smaller particles such as gases, VOCs, and bioaerosols (*e.g.*, bacteria and viruses). Sonia Easaw, *Why We Think Molekule Is the Best Air Purifier on the Market*, Molekule.com (August 31, 2019), *available at* https://molekule.science/why-we-think-molekule-is-the-best-air-purifier-on-the-market/ (*last visited* May 20, 2020).

31.     Defendant marketed the PECO filter as a "revolutionary technology" and "a fundamentally new approach to air purification by completely eliminating the full spectrum of indoor pollutants, breaking them down on a molecular level." *Id.* This is achieved, Defendant claims, through the use of PECO technology that "works when a nanoparticle-coated filter is activated by light generating a reaction on the surface of the filter, breaking down pollutants including allergens, bacteria, viruses, mold and VOCs [volatile organic compounds]." *Id.* According to Molekule, this process "converts [pollutants] into safe substances, such as carbon dioxide and water vapor."  *Id.*

32.     Molekule is the only commercially available air purification device that uses

CLASS ACTION COMPLAINT

PECO filtering technology; HEPA is the dominant filter technology in retail air purifiers. A HEPA filter works mechanically, by forcing air through a fine mesh that traps harmful particles. As per the United States Department of Energy standard, HEPA filters 99.97% of all particles of 0.3 micrometer in diameter, with efficiency increasing for larger particles. Sonya Barnette, *Specification for HEPA Filters Used by DOE Contractors — DOE Technical Standards Program*, www.standards.doe.gov (Jun 23, 2015), *available at* https://www.standards.doe.gov/standards-documents/3000/3020-astd-2015/@@images/file (*last visited* May 20, 2020).

33.    HEPA filtration devices commonly deploy a carbon filter to capture smaller particles that could pass through a HEPA filter. A carbon filter uses a chemical process called adsorption that chemically binds minute particles and gases to the carbon in the filter, removing them from the air. When combined, HEPA and carbon filters are able to remove up to 99.95% of airborne particles up to 0.1 micrometer in diameter.

**B.    Molekule's Claims**

34.    In marketing the Air Purifiers, Molekule made a number of claims regarding the performance and abilities of the Air Purifiers and the benefits purchasers should expect to gain therefrom. These claims fall into the following broad categories: (1) claims that the Air Purifiers use technology that outperforms HEPA filters; (2) claims that the Air Purifiers completely destroy indoor air pollution; (3) claims that the Air Purifiers are capable of achieving quantified pollution-removal benchmarks (for example, that an Air Purifier "destroys 1 million allergens in 4 minutes"); (4) claims that Molekule's assertions about the Air Purifiers were based on "independent testing;" (5) claims that the Air Purifiers are rated to function effectively in rooms of certain sizes; (6) claims that the Air Purifiers provide allergy and asthma symptom relief; and (7) claims that attempt to capitalize on current events.

35.    These claims were promulgated to the public through Defendant's website, YouTube videos, social media, testimonials (both from individuals and medical professionals), third party publications, and other online media. Below is a selection of claims made by

CLASS ACTION COMPLAINT

Molekule since launching the Air Purifiers.[12]

36.   **Superiority Over HEPA Filters**

a.   "There's a clear winner in the fight against pollutants. **Our scientifically-proven nanotechnology outperforms HEPA filters in every category of pollutant** from well-known allergens like dust, pollen, and pet dander to microscopic pollutants like mold, viruses, bacteria, and gaseous chemicals." Molekule.com (July 3, 2018) (emphasis added).

b.   "**PECO: The clear winner against HEPA. Traditional HEPA filters only collect some pollutants. PECO destroys them, including VOCs and mold,** with modern, breakthrough science." Molekule.com (November 10, 2019) (emphasis added).

c.   "**Molekule doesn't capture pollutants, it eliminates them**." Molekule.com (May 13, 2017) (emphasis added).

d.   "Finally, **an air purifier that actually works**." Molekule.com (July 3, 2018) (emphasis added).

37.   **Complete Destruction of Indoor Pollutants**

a.   "**By fully eliminating indoor air pollutants**, Molekule doesn't just offer noticeable relief to asthma and allergy sufferers but provides a safe

---

[1]    Plaintiff refers to archives of Molekule's website captured on May 23, 2016 (available at

https://web.archive.org/web/20160523041848/http:/molekule.com/), May 13, 2017 (available at

https://web.archive.org/web/20170513025916/https://molekule.com/), July 3, 2018 (available at

https://web.archive.org/web/20180703204640/https://molekule.com/), November 10, 2019 (available at

https://web.archive.org/web/20191110000559/https://molekule.com/air-purifiers) and April 2, 2020 (available at

https://web.archive.org/web/20200402105329/https://molekule.com/air-purifiers). These archives are available through the

Internet Archive "Wayback Machine"  *See* https://archive.org/web/.

[2]    The list of claims below is not exhaustive and omits many overlapping and/or duplicative variations on the falsehoods

detailed herein.

CLASS ACTION COMPLAINT

living environment for everyone." *Molekule Launches the World's First Molecular Air Purifier,* Molekule.com (May 24, 2016), *available at* https://assets.molekule.com/2016-05-24+-+Molekule+Launch.pdf (last visited May 20, 2020) (emphasis added).

b.  "MOLEKULE CAN HELP. What if you woke up feeling refreshed, clear-headed and ready to tackle the day? By transforming your air, you transform your state of mind. **Find comfort in knowing that the world's purest air is coming to your home**." Molekule.com (May 23, 2016) (emphasis added).

c.  "'It's a tremendous feeling,' Yogi Goswami said. 'The first great feeling was when **we showed we could 100 percent disinfect the air completely**, but my main motivation was seeing that this is helping my son, and I hope it will help everyone else also.'" Anastasia Dawson, *USF Engineer Invents Air Purifier to Combat Asthma, Allergies*, Tampa Bay Times (May 28, 2016), *available at* https://www.tampabay.com/news/education/college/usf-engineer-invents-air-purifier-to-combat-asthma-allergies/2279374/ (*last visited* May 20, 2020) (emphasis added).

d.  "Molekule catches and eliminates pollutants 1,000 times smaller than any other filter on the market, **making us the only technology that eradicates the full spectrum of indoor air pollutants**." Molekule.com (May 23, 2016) (emphasis added).

e.  "Molekule **completely eliminates** even the most microscopic pollutants like Allergens, Mold, Bacteria, Viruses and Chemicals." Molekule.com (May 23, 2016) (emphasis added).

f.  "Molekule's patented technology, Photo Electrochemical Oxidation (PECO), works at the molecular level to **eliminate indoor air pollution**" Molekule.com (May 13, 2017) (emphasis added).

g. "**Truly clean air**, year-round." Molekule.com (November 10, 2019) (emphasis added).

h. In advertisements that were shown to Facebook and Instagram users all over the United States, Defendant claimed: "This technology not only removes larger particles, like dust, dander, and pollen, but destroys microscopic allergens, like bacteria, viruses, mold, and airborne chemicals. Don't just collect allergens. Destroy them." Facebook Ad Library, Molekule Paid Advertisement (Beginning September 19, 2019) *available                                    at* https://www.facebook.com/ads/library/?id=897091407329568      (last visited May 28, 2020). This advertisement included an animation showing particles entering an Air Purifier, where all particles are destroyed, and clean, particle-free air exiting the device.

i. In advertisements that were shown to Facebook and Instagram users all over the United States, the text "Molekule destroys mold and viruses" was shown alongside an animation of particles labeled "mold" and "virus" entering an Air Purifier and dissolving under text stating "light activates nano filter" "breaking molecular bonds" "**creating clean pollutant-free air**." Facebook Ad Library, Molekule Paid Advertisement (Beginning July 10, 2019) *available at* https://www.facebook.com/ads/library/?id=679621162465617       (last visited May 28, 2020).

j. In advertisements that were shown to Facebook and Instagram users all over the United States, Defendant claimed: "Molekule **completely eliminates** airborne allergens, mold, dust, bacteria, viruses, and VOCs and makes the air you breathe healthy again." "Try a radically different air purifier." "Molekule destroys allergens, mold, dust, bacteria and VOCs—chemicals, linked to cancer. A light activated nano-filter breaks molecular bonds, **completely destroying pollutants, leaving only clean**

1    air." Facebook Ad Library, Molekule Paid Advertisement (Beginning

2    September        13,       2018)       *available*        *at*

3    https://www.facebook.com/ads/library/?id=171923143710358      (last

4    visited May 28, 2020).

5    38.   **Quantified Pollutant Destruction Claims**

6        a.   "3.9 Million E.Coli bacteria sprayed into Molekule - **100% of them**

7             **were eliminated**." Molekule.com (May 23, 2016) (emphasis added).

8        b.   The majority of Defendant's quantified pollutant destruction claims are

9             reflected in images that were displayed on Defendant's website for the

10            duration of the Class Period. Below are several such claims from

11            Defendant's website as of May 23, 2016:



c. Below are several more claims of a similar nature from Defendant's website as of July 3, 2018:



### Mold
—
Destroys 3.4 million black mold spores in 50 minutes



### Allergens
—
Destroys 1 million allergens in 4 minutes



### Viruses
—
Destroys 3.4 million ms2 viruses in 2 minutes

### Bacteria
—
Destroys 3.7 million bacteria in 5 minutes



39.   **Independent Testing**

a.   "Rigorously tested, **the science of Molekule has been independently verified by third parties** like the University of Minnesota, Particle Calibration Laboratory" and "University of South Florida Center for Biological Defense." Molekule.com (May 23, 2016) (emphasis added).

b.   "**Independent lab studies have shown** 3.9 million E.Coli completely eliminated in a single pass through a Molekule system." Molekule.com (May 13, 2017) (emphasis added).

c.   "**Independent lab results have shown** that PECO destroys VOCs quickly and efficiently" Molekule.com (July 3, 2018) (emphasis added).

d.   "Mold (ranging from 1 to 100 microns in size) spreads through the air and finds surfaces to grow on. While filters can catch mold, they also become perfect places for mold growth. Eventually, this mold gets released back into the air. Because nothing is collected during the PECO process, mold is quickly and permanently removed from the air. **Independently tested at University of South Florida's Center for Biological Defense**" Molekule.com (July 3, 2018) (emphasis added).

e. "VOCs - (ranging from 0.0001 to 0.001 microns) are too small for even best-in-class HEPA filters. Independent lab results have shown that PECO destroys VOCs quickly and efficiently. HEPA filters are unable to remove airborne chemicals from the air, even after long periods of time. Carbon filters, while able to capture some chemicals from the air, re-emit these same chemicals back into the room. **Independently tested at University of Minnesota's Particle Calibration Laboratory**" Molekule.com (July 3, 2018) (emphasis added).

f. "Viruses, like VOCs, are microscopic (ranging from 0.001 microns to 0.1 microns) and are too small for HEPA to catch. PECO offers the first effective solution at managing the spread of airborne infectious diseases. In just two minutes, Molekule can eliminate hundreds of airborne viruses that are brought in by people or pets. **Independently tested at University of Minnesota's Particle Calibration Laboratory**" Molekule.com (July 3, 2018) (emphasis added).

g. "**Independent testing reveals** Molekule's PECO technology successfully destroys mold, bacteria and viruses"). Molekule.com (April 2, 2020) (emphasis added).

40. **Room Size**

a. "Made for Large Rooms Molekule is able to **completely replace the air in a 600 square foot room (large living room) once an hour.** Its 360° air intake pulls in pollutants from all sides, projecting clean air evenly across the entire room." Molekule.com (July 3, 2018) (emphasis added).

b. "**Molekule Air replaces the air in a 600 sq. ft. room every hour**. Its 360-degree air intake pulls in pollutants from all sides. It uses PECO technology to destroy them and release clean air evenly across the entire room." Molekule.com (April 2, 2020) (emphasis added).

41. **Alleviation of Allergy and Asthma Symptoms**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

a.  "By fully eliminating indoor air pollutants, **Molekule doesn't just offer noticeable relief to asthma and allergy sufferers but provides a safe living environment for everyone**." *Molekule Launches the World's First Molecular Air Purifier,* Molekule.com (May 24, 2016), *available at*   https://assets.molekule.com/2016-05-24+-+Molekule+Launch.pdf (last visited May 20, 2020) (emphasis added).

b.  "Real People. Real Proof. Our beta trial was conducted on 28 participants including asthma and allergy sufferers. **After using Molekule, there was no difference in total symptom score between allergy and non-allergy sufferers. Results point to the potential for Molekule to immediately improve allergy sufferers quality of life**." Molekule.com/technology#trials (May 13, 2017) (emphasis added).

c.  "Goswami beta tested his Molekule air purifier with 30 testers across the country, **all of which he said saw tremendous health benefits**." Anastasia Dawson, *USF Engineer Invents Air Purifier to Combat Asthma, Allergies*, TAMPA BAY TIMES (May 28, 2016), *available at* https://www.tampabay.com/news/education/college/usf-engineer-invents-air-purifier-to-combat-asthma-allergies/2279374/ (*last visited* May 20, 2020) (emphasis added).

d.  Molekule also deployed testimonials from individuals and medical professionals touting the therapeutic benefit of the Air Purifiers.

e.  Chris Tashjian, "Family Physician," stated in a short video clip that: "I no longer take any antihistamines. I've gone from taking two to three a day down to taking zero." Facebook Ad Library, Molekule Paid Advertisement (Beginning September 13, 2018) *available at* https://www.facebook.com/ads/library/?id=1837837282930176 (*last visited* May 28, 2020).

f.  "'The unit has made a huge impact on my son's quality of life. For the first time waking up is not a battle, he's not fighting such congestion and

CLASS ACTION COMPLAINT

is getting a good night sleep.' Jodie, Florida" Molekule.com (May 23, 2016)

g.  "'The thing that surprised me was getting rid of my red eyes and sneezing. Now I'm free of that and I'm so happy!' Tanvir, New York" Molekule.com (May 23, 2016)

h.  "'I had to visit the ER regularly. Its been eight months since I have been using Molekule's device, and I haven't been to the ER since.' Sandy, San Diego" Molekule.com (May 23, 2016)

i.  "THE MOM Jodie French 'Molekule has significantly reduced my allergy symptoms. I no longer have constant sinus pressure and irritated eyes. But the biggest change was for my son, Peyton, who's no longer battling congestion and finally getting a good night's sleep!'" Molekule.com (May 13, 2017)

j.  "THE DOCTOR Dr. Stephen Liggett Assoc. VP of USF Health 'As a pulmonologist who also suffers from asthma I was very impressed by the results I experienced after only a few weeks of using the Molekule device. Despite trying different interventions and medications in the past, I was still experiencing many symptoms. But with Molekule, I finally felt less congestion, was not waking up with headaches in the morning, and had no nocturnal awakenings from my asthma. I feel that the technology holds great potential for future patients.'" Molekule.com (May 13, 2017).

k.  "THE ALLERGY & ASTHMA SUFFERER Sandi Rosalia 'Before using Molekule I was going to the ER and my Allergist/Immunologist on a regular basis. It's been over a year and I haven't been back to the ER or to my doctor for my breathing treatments. Your product works and I feel so lucky to be part of the testing process.'" Molekule.com (May 13, 2017).

42.    **Claims Regarding Current Events.**

CLASS ACTION COMPLAINT

a.  During the summer of 2018, while smoke generated by the Camp Fire wildfires rolled through Northern California, residents of the area noticed an uptick in Air Purifier advertising on their social media feeds. Sarah Emerson, *Startup Molekule Is Using the California Wildfires to Sell Its Crummy Air Purifier*, OneZero (October 29, 2019), *available at* https://onezero.medium.com/startup-molekule-is-using-the-california-wildfires-to-sell-its-crummy-air-purifier-6de052c9f773 (*last visited* May 27, 2020). Beginning in August 2018, Molekule ran ads claiming that the Air Purifier was capable of neutralizing the pollution caused by the wildfires.

b.  For example, in text superimposed over an aerial view of a burning forest: "Molekule air purifier destroys pollutants and gaseous chemicals in wildfire smoke. Unlike traditional air purifiers, Molekule uses nanoparticles on a light-activated filter to completely destroy dangerous pollutants and particulate matter **leaving only pure air**." Facebook Ad Library, Molekule Paid Advertisement (Beginning August 24, 2018) *available at* https://www.facebook.com/ads/library/?id=261833251110177 (*last visited* May 27, 2020).

c.  Molekule has more recently attempted to capitalize on fear of the coronavirus.

d.  Co-founder and Chief Scientist Yogi Goswami declared: "I am very confident that this technology will destroy Coronavirus. Although we have not tested it on that virus itself, we have tested it on viruses of that type." Angelina Salcedo, *Tampa Bay professor might have the answer to stopping coronavirus*, WTSP.com (Feb. 21, 2020), *available at* https://www.wtsp.com/article/news/health/tampa-bay-researcher-might-have-the-answer-to-stopping-coronavirus/67-e91c5592-cc39-47b5-a4d9-aa1365c370a7 (*last visited* May 27, 2020). Mr. Goswami

continued: "You would put the units in the room where you're
concerned about. There's a fan in the unit which sucks air into the unit
and the air that comes out comes out totally clean. So, this is not a cure,
but it reduces the risk of infection." *Id.*

e.   Jaya Rao, also a co-founder and the daughter of Mr. Goswami, told an
interviewer that "Coronavirus is actually a rather simple structure for us
to be able to be destroy." Hailey Waller, *This Air Purifier Maker Is
Accelerating Tests on Coronavirus*, Bloomberg.com (February 23,
2020), *available at* https://www.bloomberg.com/news/articles/2020-02-
23/this-air-purifier-maker-is-accelerating-tests-on-coronavirus        (*last
visited* May 27, 2020).

43.    Following the launch of the Molekule Air, Molekule's claims were largely
repeated uncritically by multiple publications—but they did not hold up when examined.
Multiple reputable organizations, including review publications like Consumer Reports and
Wirecutter and industry watchdogs like the National Advertising Division have concluded that
the Air Purifiers are not capable of effectively removing pollutants from the air or functioning as
Defendant claims.

**C.    Molekule's Claims Were False and Misleading**

44.    On October 31, 2019, Wirecutter, a New York Times-affiliated technology review
publication, published a review and YouTube video that detailed the results of its testing and
concluded "The Molekule is the worst performing air purifier that we have ever tested." Tim
Heffernan, The Best Air Purifier, Wirecutter.com (May 13, 2020), *available at*
https://thewirecutter.com/reviews/best-air-purifier/#molekule-the-worst-air-purifier-weve-ever-
tested (last visited May 21, 2020); Tim Heffernan, Molekule: The Worst Air Purifier We've Ever
Tested, Youtube.com (Oct. 31, 2019), *available at*
https://www.youtube.com/watch?v=VM9CJZpqfpA (last visited May 21, 2020).

45.    Wirecutter's primary endeavor was to test Molekule's claim that: "Our
scientifically-proven nanotechnology outperforms HEPA filters in every category of pollutant

CLASS ACTION COMPLAINT

from well-known allergens like dust, pollen, and pet dander to microscopic pollutants like mold, viruses, bacteria, and gaseous chemicals." Tim Heffernan, The Best Air Purifier, Thewirecutter.com (Feb. 25, 2020), *available at* https://thewirecutter.com/reviews/best-air-purifier/#molekule-the-worst-air-purifier-weve-ever-tested (last visited April 2, 2020). To that end, the reviewer submitted a Molekule Air to a battery of standard tests in comparison with other air purifiers employing standard HEPA filter technology.

46.     According to the reviewer, "[t]he Molekule turned in the worst performance on particulates of any purifier, of any size, of any price, that we have tested in the seven years that we have been producing this guide." Disturbingly, the testing found that "unlike the HEPA purifiers, all of which proved capable of deeply cleaning the air, the Molekule left the air heavily loaded with particulates on every setting." The review continues:

> At a certain point, these results look worse than what you see with no purifier running at all. In a pair of baseline background tests, which we use as a control measure, 0.3-micron particulate levels dropped by 13.9 and 15.3 percent on their own. That's due to settling, in which particles fall to a room's surfaces; agglomeration, in which two or more particles naturally combine to form a single particle; and ambient ventilation, which we standardized for all our tests. One possible reason the Molekule performed worse than background reduction is that its fan stirred up the air and kept particles from settling.

*Id.*

47.     Wirecutter subsequently updated its air purifier guide on February 25, 2020, to reflect that Molekule had removed from its website the false claim that "Our scientifically-proven nanotechnology outperforms HEPA filters in every category of pollutant from well-known allergens like dust, pollen, and pet dander to microscopic pollutants like mold, viruses, bacteria, and gaseous chemicals." *Id.*

48.     Consumer Reports, a consumer-oriented non-profit organization,

CLASS ACTION COMPLAINT

1  published its own review of the Molekule on December 9, 2019. That review found that

2  the Molekule "almost flunked" the standard array of tests that air purifiers are put

3  through, declaring: "It is the third-lowest-scoring air purifier of the 48 we tested." Perry

4  Santanachote, *Does The Molekule Air Purifier Live Up To The Hype?*,

5  Consumerreports.org (Dec. 9, 2019), *available at* https://www.consumerreports.org/air-

6  purifiers/molekule-air-purifier-review/ (last visited April 2, 2020).

7

8      49.     Consumer Reports' testing showed that the Molekule was "not proficient at

9  catching larger airborne particles"—which would include the pollutants Molekule claims to

10  destroy—indicating that "it's not getting enough air passing through the system." *Id.* At high

11  speed, the device received "a Fair rating for smoke and dust removal" and "a Poor—the lowest

12  score possible—at low speed." *Id.*

13      50.     Additionally, Consumer Reports disputed Molekule's claim that the

14  Molekule Air was rated for a room of up to 600 square feet:

15          The manufacturer says the Molekule Air is sized for rooms up to

16          600 square feet, but its performance in our tests ranks it among

17          compact models that are designed for small rooms. Based on our

18          lab's calculated rate at which it can process the the air, the

19          Molekule Air wouldn't be able to handle any room larger than 100

20          square feet.

21  *Id.*

22      51.     The Wirecutter and Consumer Reports findings were subsequently corroborated

23  in private proceedings against Defendant. Dyson, Inc., a maker of competing air purifiers,

24  initiated a proceeding before the National Advertising Division ("NAD"), a Better Business

25  Bureau affiliate organization that independently evaluates national advertising and enforces

26  standards of truth and accuracy in advertising claims. Dyson challenged twenty-six claims made

27  on Defendant's website, YouTube videos, and social media, in testimonials, and other online

28  advertisements. Those claims fell into the following categories:

CLASS ACTION COMPLAINT

a. Claims that the Air Purifier, or the PECO technology, as deployed in the Air Purifier, "completely 'eliminates,' 'destroys,' or 'permanently removes' all indoor air pollution or any specific bioaerosol;"

b. Claims quantifying the Air Purifier performance, *e.g.*, claims such as a "specific bioaerosol was completely eliminated (reduced to 0%)" and that the Air Purifier "destroys 1 million allergens in 4 minutes;"

c. VOC elimination claims, including the claim that "Independent lab results have shown that PECO destroys VOCs quickly and efficiently";

d. Claims regarding the Air Purifier's performance in large rooms, such as "Made for large rooms. Molekule is able to completely replace the air in a 600 square foot room (large living room) once an hour;"

e. Claims by Molekule that its PECO technology is superior to HEPA technology; and

f. Claims that the Air Purifier can provide allergy and asthma symptom relief.

52.     On October 25, 2019, the NAD issued a decision finding all twenty-six of Molekule's advertising claims to be unsubstantiated and recommending that they be withdrawn. For example, NAD concluded that Molekule had provided evidence that was "insufficiently reliable to provide a reasonable basis for" its claims regarding the efficacy of the Air Purifier and its ability to eliminate or destroy pollution, noting that the testing results submitted by Molekule called into question whether the Air Purifier would have the benefits claimed "under real-world conditions." *NAD Recommends Molekule Discontinue Pollution Elimination, Asthma and Allergy Symptom Relief Claims for its Molekule Home One Air Purifier; Advertiser to Appeal Certain Findings*, BBB National Programs Archive (Oct. 25, 2019) *available at* https://bbbprograms.org/archive/nad-recommends-molekule-discontinue-pollution-elimination-asthma-and-allergy-symptom-relief-claims-for-its-molekule-home-one-air-purifier-advertiser-to-appeal-certain-findings/ (*last visited* May 21, 2020). NAD also found that Molekule had provided evidence insufficient to "substantiate claims about product performance for either

PECO or HEPA, or Molekule's comparative superiority claims of PECO versus HEPA . . . and recommended they be discontinued." *Id.*

53.     NAD also considered Molekule's claims (including those based on Defendant's own studies, independent testing, and testimonials from doctors and patients) regarding the therapeutic benefits of the Air Purifiers for allergies and asthma. Molekule targeted asthma sufferers with its advertising, making claims such as:

> Real people. Real proof. Our beta trial was conducted on 28 participants including asthma and allergy sufferers. After using Molekule, there was no difference in total symptom score between allergy and non-allergy sufferers. Results point to the potential for Molekule to immediately improve allergy sufferers['] quality of life.

NAD determined that Molekule's allergy and asthma symptom relief claims, including the "Real people. Real Proof" claim, "and claims referencing (explicitly or implicitly) its Beta Trial and Expanded Study, were unsupported and recommended that they be discontinued." *Id.*

54.     NAD noted that Molekule did not provide important information on the two human studies it had conducted and found that both studies were insufficient basis for its claims, citing the small study populations and lack of blinding.  NAD also found that much of the "independent" research on which Molekule's claims relied was done either at a lab where Molekule's founder is a director or at a lab that the company sponsors. NAD also concluded that the evidence submitted by Molekule failed to "provide reliable support for the consumer and doctor testimonials containing allergy and asthma symptom relief claims . . . ." *Id.* [3]

55.     Molekule agreed to withdraw the majority of the challenged claims from its advertising but appealed NAD's findings regarding its pollution elimination claims (excluding

---

[3]     For example, the "Real People. Real Proof" study was conducted by Dr. Nikhil G. Rao on a group of twenty eight participants. There was no blinding in the study and Dr. Rao is an interested party, as he "has been the chief medical advisor to Molekule . . . since its inception." Nikhil Rao, MD, ISEAI.org, *available at* https://iseai.org/nikhil-rao-md/ (last visited May 21, 2020).

CLASS ACTION COMPLAINT

claims regarding quantified pollution elimination) and claims to the comparative superiority of PECO technology over HEPA technology.

56.     On March 26, 2020, a panel of the National Advertising Review Board ("NARB"), the appellate body responsible for review of NAD decisions, issued a determination on Molekule's appeal. It upheld NAD's recommendation that "Molekule discontinue or modify certain non-quantified pollution elimination claims for [the Air Purifier], and discontinue the challenged comparative superiority claims versus air purifiers that contain HEPA filters." *NARB Finds Supported Claims by Molekule that the PECO Filter of its MH1 Air Purifier Can Address Bioaerosol and VOC Pollution; Recommends Discontinuance or Modification of Other Claims, Including Discontinuance of Superiority Claims vs. HEPA Filters*, BBB National Programs, Inc. (Mar 26, 2020), *available at* https://www.prnewswire.com/news-releases/narb-finds-supported-claims-by-molekule-that-the-peco-filter-of-its-mh1-air-purifier-can-address-bioaerosol-and-voc-pollution-recommends-discontinuance-or-modification-of-other-claims-including-discontinuance-of-superiority-clai-301030514.html (*last visited* May 21, 2020).

57.     Although NARB determined that Molekule had sufficiently supported its claim that PECO technology as deployed in the Air Purifier "can address bioaerosol and VOC pollution" and that the Air Purifiers can "destroy[] pollutants at the molecular level," the panel agreed with NAD's previous conclusions regarding Molekule's claims of superiority over HEPA and claims that the Air Purifier "removes or destroys all pollutants in a room or completely eliminates such pollutants." *Id.* NARB recommended that Molekule discontinue all such claims, and "Molekule stated that it will comply with the panel's recommendations." *Id.*

**D.     Plaintiff and Class Members Relied on Molekule's False Representations**

58.     Defendant's misrepresentations and false statements were woven into an extensive and long-term advertising campaign that began on or before the launch of the Air Purifiers in May of 2016. Defendant spent at least hundreds of thousands of dollars—likely millions—to spread false claims about the Air Purifiers through its own website, social media, interviews with traditional media, YouTube, and other fora

59.     Molekule and its founders authored these false and misleading claims and promoted them through various outlets, including through third party publications who repeated

CLASS ACTION COMPLAINT

Molekule's claims without question. Molekule's intent was to cause a "buzz" that would attract customers and construct a veneer of credibility around their falsehoods. They largely succeeded.

60.     These misleading ads were viewed by millions and drove sales of Air Purifiers across the country. As described above, Plaintiff first saw Defendant's wildfire-related advertisements in 2018 and found compelling Defendant's representation that the Air Purifier would "completely destroy dangerous pollutants and particulate matter leaving only pure air." Facebook Ad Library, Molekule Paid Advertisement (Beginning August 24, 2018) *available at* https://www.facebook.com/ads/library/?id=261833251110177 (*last visited* May 27, 2020). This was false. The Air Purifiers have been proven ineffective at removing particulates from the air and would not be able to "leav[e] only pure air."

61.     Plaintiff was familiar with Defendant's claims regarding the superiority of its PECO filters over HEPA filters. This was a critical selling point for Mr. Poznansky, as he was hoping to purchase the most effective air purifier available. And this was a core theme in Defendant's advertising, at least until Wirecutter published its test results showing that the Air Purifiers are dramatically less effective than comparable HEPA air purifiers. After that review was released Defendant removed this claim from its website. But, by that point, Plaintiff and many other members of the class had seen these false claims and purchased Air Purifiers in reliance on them.

62.     Mr. Poznansky also believed, based on his familiarity with Defendant's claims, that the Air Purifiers would eliminate airborne allergens indoors and thereby completely ameliorate allergy symptoms. This claim is also false or, at the very least, made recklessly and without substantiation. NAD considered evidence submitted by Molekule in support of its allergy and asthma symptom relief claims and concluded that Molekule had failed to "provide reliable support for the consumer and doctor testimonials containing allergy and asthma symptom relief claims . . . ." *NAD Recommends Molekule Discontinue Pollution Elimination, Asthma and Allergy Symptom Relief Claims for its Molekule Home One Air Purifier; Advertiser to Appeal Certain Findings*, BBB National Programs Archive (Oct. 25, 2019) *available at* https://bbbprograms.org/archive/nad-recommends-molekule-discontinue-pollution-elimination-asthma-and-allergy-symptom-relief-claims-for-its-molekule-home-one-air-purifier-advertiser-to-

CLASS ACTION COMPLAINT

appeal-certain-findings/ (*last visited* May 21, 2020). Moreover, this claim is contradicted by the fact the Air Purifiers are ineffective at removing particulates—like allergens—from the air.

63.     One critical factor in Mr. Poznansky's decision to purchase an Air Purifier was his belief that it could protect him from coronavirus. Mr. Poznansky had seen Defendant's claims regarding the ability of Air Purifiers kill ninety-nine per cent of viruses, a claim which Molekule began making as early as 2016. He also read an interview with Jaya Rao, co-founder of Molekule, which described Ms. Rao receiving a "warm welcome" from passengers "freaked out about all this viral stuff" when she plugged in an Air Purifier for use on a cross-country flight. After detailing Defendant's purported efforts to test the ability of the Air Purifiers to kill coronavirus, Ms. Rao asserted that "Coronavirus is actually a rather simple structure for us to be able to be destroy." Hailey Waller, *This Air Purifier Maker Is Accelerating Tests on Coronavirus*, Bloomberg.com (February 23, 2020), *available at* https://www.bloomberg.com/news/articles/2020-02-23/this-air-purifier-maker-is-accelerating-tests-on-coronavirus (*last visited* May 27, 2020). Based on this interview and Molekule's claims regarding the abilities of the Air Purifiers, Mr. Poznansky believed that an Air Purifier could serve as an effective prophylactic against coronavirus. He was not aware that Molekule's statements were false and/or misleading, as they were based on testing conducted by interested parties and/or under highly controlled conditions that do not mimic the actual operating environment in which an Air Purifier operates. Additionally, Molekule has admitted that it has not conducted such testing on the Covid-19 virus but only on "proxy viruses." *Id.*

64.     The members of the Class also relied on various other false claims made by Molekule in purchasing Air Purifiers. Many Class members were impressed by Molekule's claims that the Air Purifiers are capable of achieving quantified benchmarks (for example, that an Air Purifier "destroys 1 million allergens in 4 minutes"), which were typically communicated graphically. But, as confirmed in the NAD proceeding, these claims are misleading as they are the results of controlled test conditions and have little relevance to the capabilities of the Air Purifiers when operating in the real world.

65.     Nearly all types of Molekule's claims were bolstered by Molekule's assertion it was communicating the results of "independent testing," and many class Members found this

CLASS ACTION COMPLAINT

compelling. But it is now clear that these tests were anything but independent as they were conducted by parties connected to Defendant and were critically flawed.

66.     Finally, Defendant has claimed from the launch of the Air Purifiers that the devices are capable of performing in rooms of up to a certain size—600 square feet for the Molekule Air, and 250 square feet for the Air Mini and Air Mini+. Plaintiff and Members of the Class relied on these representations in choosing to purchase the Air Purifiers, but these claims are also false. Consumer Reports found that the Molekule Air would be capable of effectively cleaning a room of no more than 100 square feet, an 84 per cent reduction in performance capability.

67.     Defendant voiced their false and misleading claims in many venues over a multi-year period with the intent to instill in consumers the belief that the Air Purifiers were vastly superior to existing technology and capable of completely eradicating pollutants and other undesirable particles from indoor spaces. Plaintiff and the members of the Class saw these claims and relied on them in purchasing the Air Purifiers, believing that they were buying the best air purifiers available when in fact they were purchasing air purifiers that are largely ineffective.

**E.     Molekule Concealed the Defect in the Air Purifiers**

68.     Molekule designed, manufactured, marketed, and sold Air Purifiers across the United States while knowingly concealing the Defect in the Air Purifiers.

69.     As described by Wirecutter and Consumer Reports testing and reviews, and the findings of NAD and NARB, the Air Purifiers are incapable of performing as advertised. The Air Purifiers are unable to clean air at anywhere near the efficacy claimed by Defendant, perform substantially worse than competing air purifiers, especially those utilizing HEPA filters, and do not offer the therapeutic benefits claimed by Molekule. Consequentially, Molekule's claims regarding the performance, capabilities, and therapeutic benefits of the Air Purifiers were false and misleading.

70.     Defendant's claims were material to Plaintiff and the members of the Class but Molekule did not disclose to purchasers of the Air Purifiers that the devices were defective and unable to fulfill many of Molekule's advertising claims. As a result, Plaintiff and the members of

CLASS ACTION COMPLAINT

the class purchased devices that they would not have otherwise purchased or for which they would have paid less. Many members of the Class relied on Defendant's assertions that the Air Purifiers was capable of producing specific outcomes—*e.g.*, reducing asthma and allergy symptoms or "completely eliminating the full spectrum of indoor pollutants"—and received devices that were unfit for the purposes for which they were purchased.

71.     Defendant's greed-driven scheme won the company acclaim, sales, and nearly a hundred million dollars in venture capital investments at the expense of Plaintiff and Class members across the country and in violation of applicable law.

## CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this lawsuit on behalf of himself and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4). Specifically, the classes consist of:

### Nationwide Class

All persons in the United States who purchased an Air Purifier.

### California Subclass

All persons in the state of California who purchased an Air Purifier.

73.     The Nationwide Class and California Subclass are together referred to herein as the "Class." Excluded from the Class are: (a) any Judge presiding over this action and members of their immediate families; (b) Defendant and their subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

74.     **Numerosity**: The Class is comprised of thousands of owners of Air Purifiers, making joinder of all Class members impractical. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals and entities that purchased Air Purifiers. The precise number of Class members can be ascertained through discovery, which includes Molekule's records. The disposition of their claims through a class action will benefit both the parties and this Court.

75.     **Commonality**: There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions

CLASS ACTION COMPLAINT

affecting only individual Class members.  Among the questions common to the Class are:

    a.       Whether the PECO filter or Air Purifiers are defective;

    b.       The origins and implementation of, and the justifications for, if any, Molekule's policies and technology relating to the Defect and its manifestation in the Air Purifiers;

    c.       Whether Air Purifiers are plagued by a defect(s) that causes them to purify the air far less effectively than advertised;

    d.       When Molekule became aware of the Defect in the Air Purifiers and how it responded to that knowledge;

    e.       Whether Molekule actively concealed and/or failed to notify consumers of the Defect in the Air Purifiers;

    f.       Whether Defendant knew of these issues but failed to disclose the problems and their consequences to their customers;

    g.       Whether a reasonable consumer would consider the Defect and its consequences to be material;

    h.       Whether Defendant's conduct violates state consumer protection laws as asserted herein;

    i.       Whether Defendant's sale of defective Air Purifiers is unfair, false, misleading, or deceptive acts in the conduct of any trade or commerce;

    j.       Whether Plaintiff and the other Class members overpaid for their Air Purifiers as a result of the Defect alleged herein;

    k.       Whether Plaintiff and Class Members would have purchased their Air Purifiers, and whether they would have paid a lower price for them, had they known that they contained the Defect and were unable to effectively remove pollutants from the air at the time of purchase;

    l.       Whether Plaintiff and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all

CLASS ACTION COMPLAINT

out-of-pocket monies expended by members of the Class for

replacement or repair of the Air Purifiers and filter replacement; and

(ii) the failure of consideration in connection with and/or difference

in value arising out of the variance between the Air Purifiers as

merchantable and, and as actually manufactured and sold possessing

the Defect; and

m.     Whether Plaintiff and the other Class members are entitled to

equitable relief, including, but not limited to, restitution or injunctive

relief.

76.     **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the Air Purifiers. All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein.  Plaintiff and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members.  Plaintiff and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all absent Class members.

77.     **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of the Class members and have no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, product design defects, and state consumer fraud statutes.

78.     **Predominance**: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

79.    **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

80.    Nexus to California: The State of California has a special interest in regulating the affairs of corporations that do business here and persons who live here. Defendant is based in San Francisco, California. Defendant designed and implemented the unlawful and deceptive conduct described in this Complaint from its headquarters in the San Francisco Bay Area. Additionally, Defendants has more consumers in California than in any other state. Accordingly, there is a substantial nexus between Defendant's unlawful behavior and California such that the California courts should take cognizance of this action on behalf of a class of individuals who reside in California and the United States

## CAUSES OF ACTION

## COUNT I

## DECEIT AND FRAUDULENT CONCEALMENT

81.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

82.    Plaintiff asserts this claim on behalf of the Class. In the alternative, this claim is brought on behalf of the California Subclass.

83.    Defendant made false representations concerning the performance and quality of the Air Purifiers, and the quality of the Defendant's brand. Further, Defendant concealed and suppressed material facts concerning the performance and quality of the Air Purifiers, the quality of the Defendant's brand, the Air Purifiers' capabilities and benefits, and the Defect. Defendant knew, or in the exercise of reasonable diligence should have known, of the Defect and

CLASS ACTION COMPLAINT

misrepresentations of the capabilities and benefits of the Air Purifiers, but failed to disclose these facts prior to or at the time it marketed Air Purifiers and sold them to consumers. Defendant engaged in this concealment in order to increase sales of its Air Purifiers.

84.     Plaintiff and Class members had no reasonable way of knowing that Defendant's representations were false and misleading, or that Defendant had omitted to disclose highly important details relating to the Air Purifiers' performance and the Defect. Plaintiff and Class members did not and could not reasonably discover Defendant's deception on their own.

85.     Defendant had a duty to disclose the true performance of the Air Purifiers because the scheme and its details were known and accessible only to Defendant; Defendant had superior knowledge and access to the relevant facts; and Defendant knew these facts were neither known to, nor reasonably discoverable by, Plaintiff and the Class members.

86.     Defendant still has not made full and adequate disclosures and continue to defraud consumers by concealing material information regarding the true performance of Air Purifiers.

87.     Plaintiff and Class members were unaware of the omitted material facts and would not have purchased the Air Purifiers had they known of the facts Defendant suppressed. Plaintiff and Class members' actions in purchasing Air Purifiers were justified. Defendant was in exclusive control of the material facts and such facts were not reasonably known to the public, Plaintiff, or Class members.

88.     Plaintiff and Class members relied to their detriment upon Defendant's representations, fraudulent misrepresentations, and material omissions regarding the quality of Air Purifiers, the Air Purifier' effectiveness, and the Defect in deciding to purchase their devices.

89.     Plaintiff and Class members sustained damage as a direct and proximate result of Defendant's deceit and fraudulent concealment. Among other damages, Plaintiff and Class members did not receive the value of the premium price they paid for their Air Purifiers. Plaintiff and Class members would not have purchased Air Purifiers had they known of the Air Purifiers' inability to effectively remove particulates from the air owing to the Defect.

90.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an

CLASS ACTION COMPLAINT

1   amount sufficient to deter such conduct in the future, which amount is to be determined

2   according to proof.

3                                          **COUNT II**

4               **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**

5                    **CAL. BUS. & PROF. CODE §17500,** *et seq.***,**

6       91.     Plaintiff repeats and realleges the above allegations as if fully set forth herein

7       92.     Plaintiff brings this Count individually and on behalf of the California Subclass.

8       93.     Defendant's acts and practices as described herein have deceived and/or are likely

9   to deceive Plaintiff and Class members.  Defendant engaged in public advertising and marketing

10  that made material misrepresentations and omissions regarding the performance and benefits of

11  the Air Purifiers.  Such advertisements deceived and continue to deceive the consuming public

12  for the reasons detailed above.

13      94.     In marketing the Air Purifiers and failing to disclose the Defect, Defendant knew

14  or should have known that their representations and omissions were misleading.

15      95.     Defendant intended Plaintiff and Class members to rely upon the advertisements

16  and numerous material misrepresentations as set forth more fully elsewhere in the Complaint.  In

17  fact, Plaintiff and Class members did rely upon the advertisements and misrepresentations to

18  their detriment.

19      96.     As a result of Defendant's misrepresentations and omissions, Plaintiff and the

20  Class suffered real financial damages.

21      97.     Pursuant to the CFAL, Plaintiff and the Class seek an order or judgment as

22  necessary to restore any monies acquired by unfair competition, including restitution and/or

23  disgorgement, rescission and/or any other relief that this Court deems proper.

24                                         **COUNT III**

25             **VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**

26                 **(Cal. Bus. & Prof. Code § 17200, et seq.) ("UCL")**

27      98.     Plaintiff  repeat  and  allege  the  above  allegations  as  if  fully  set  forth

28  herein

CLASS ACTION COMPLAINT

99. Plaintiff brings this Count individually and on behalf of the California Subclass.

100. The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

101. Defendant's conduct, as described herein, was and is in violation of the UCL. Defendant's conduct violates the UCL in at least the following ways: (a) knowingly and intentionally concealing from Plaintiff and the members of the California Subclass the existence of the Defect in the Air Purifiers; (b) marketing the Air Purifiers as being functional and not possessing a defect that would render them unable to perform as Defendant claimed; and (c) violating other California laws, including California laws governing false advertising and consumer protection.

102. Defendant's misrepresentations and omissions alleged herein caused Plaintiff and the members of the California Subclass to purchase their Air Purifiers. Absent these misrepresentations and omissions, Plaintiff and the members of the California Subclass would not have purchased their Air Purifiersat the prices they paid (or purchased them at all).

103. Defendant had a duty to disclose these issues because it had exclusive knowledge of the Defect prior to making sales of Air Purifiers, and because Defendant made partial representations about the quality of the Air Purifiers, but failed to fully disclose the problems as well.

104. As a result of Defendant's misrepresentations and omissions, Plaintiff and the members of the California Subclass have suffered injury in fact, including lost money or property.

105. Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant under Cal. Bus. & Prof. Code § 17200.

106. Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices, and to restore to Plaintiff and the members of the California Subclass any money they acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided for under Cal. Bus. & Prof. Code §§ 17203 & 3345; and for such other relief set forth below.

## COUNT IV

CLASS ACTION COMPLAINT

1

2

**UNJUST ENRICHMENT**

107.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

108.    Plaintiff asserts this claim on behalf of the Class. In the alternative, this claim is brought on behalf of the California Subclass.

109.    Plaintiff and Class Members have conferred a benefit on Defendant by purchasing their Air Purifiers.

110.    The Air Purifier purchased by Plaintiff and the Class members did not provide the promised performance and instead contained a uniform defect.

111.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' Air Purifiers and out-of-pocket repair and filter replacement costs. Retention of such revenues under these circumstances is unjust and inequitable because of the Defect which has caused injury to Plaintiff and the Class by depriving them of Air Purifiers that are capable of effectively purifying air. Defendant's actions caused further injuries to Plaintiff and the Class because they would not have purchased their Air Purifiers or would have paid less for them if the true characteristics of the devices had been known at the time of purchase.

112.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

        a.    For an order certifying the proposed classes and appointing Plaintiff and his counsel to represent the classes;

        b.    For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

CLASS ACTION COMPLAINT

c. For an order awarding Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

d. For an order or orders requiring Defendant to adequately disclose and remediate the Defect.

e. For an order awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

f. For an order awarding Plaintiff and Class members treble damages, other enhanced damages and attorneys' fees as provided for under the statutes cited above and related statutes;

g. For an order awarding Plaintiff and the Class members reasonable attorneys' fees and costs of suit, including expert witness fees;

h. For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: June 12, 2020

By:    /s/ Esfand Nafisi

Esfand Y. Nafisi, Esq. (SBN 320119)
**MIGLIACCIO & RATHOD LLP**
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 489-7004

Nicholas A. Migliaccio, Esq.*
Jason S. Rathod, Esq.*
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: (202) 470-3520
Nicholas A. Migliaccio, Esq.*
Jason S. Rathod, Esq.*

* *pro hac vice* forthcoming

CLASS ACTION COMPLAINT

1

2                                                    *Attorneys for Plaintiff*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT